**IN THE COURT OF APPEALS OF IOWA**

No. 21-1350
Filed January 12, 2022

**IN THE INTEREST OF H.B.,**
**Minor Child,**

**K.B., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Frideres-Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to her four-year-old son. **AFFIRMED.**

Marshall W. Orsini, of Law Offices Marshall W. Orsini, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Mike Bandstra, Des Moines, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her son. There is clear and convincing evidence that the child could not be returned to the custody of his mother at the time of the termination hearing. Termination of the mother's parental rights is in the child's best interest. Accordingly, we affirm.

## I. Background Facts and Proceedings

H.B. is a four-year-old male child. He came to the attention of the Iowa Department of Human Services (DHS) in May 2017 when DHS received reports that the parents had engaged in physical altercations in their children's presence. H.B. was an infant at the time, while his half-sibling, K.B., was nine. DHS determined the report to be unfounded. However, DHS determined that the father had been using methamphetamine and the mother allowed him around the children unsupervised. The father was arrested for possession of marijuana in May 2017. The mother denied any knowledge of his drug use. The father's probation for a previous offense was revoked in July, and the mother admitted to using marijuana during this time period. She began therapy in September.

The mother and the father remained in consistent contact while he was in jail. Video recordings reflect a domestically abusive relationship, with the parents using vulgar language, threatening each other, and arguing. The recordings also show the mother yelling and cursing at K.B. The mother refused to participate in K.B.'s recommended mental-health services except to tell K.B's therapist that the child was a liar. A child-in-need-of-assistance (CINA) petition was filed on August 30, 2017, which began H.B.'s four-year languish in the system, a period nearly equivalent to his lifetime. Subsequently, H.B.'s guardian ad litem (GAL)

applied for a temporary removal, which was granted on September 21, 2017. The court ordered H.B.'s removal based on the parent's domestic violence, the parent's substance-abuse issues, verbal and emotional abuse of the children, the father's placement in residential programming, and the parents' failure to supervise the children. The children were adjudicated CINA on October 5.

The children were returned to the mother after the State moved to modify placement in June 2018. The State filed a similar motion in December 2018, seeking to return the children to the joint custody of the mother and the father, which was granted. Based on the father's relapse and later arrest during the summer of 2019, the children were removed from his custody. The mother again denied knowledge of father's drug use, and the children remained in her custody.

Unbeknownst to DHS, the mother began a relationship with a man named Dominick in December 2019. Dominick had an adult son, Donovan. They both had long criminal records and Dominick had a history of drug use. Dominick had a pending charge for theft and assault while participating in a felony. Both Dominick and Donovan appeared to be living with the mother and the two children. Dominick was arrested on May 4, 2020, while driving the mother's car. Police found a handgun that the mother later admitted was hers. They also found a container holding what was later determined to be methamphetamine and a glass pipe used to smoke methamphetamine. The mother remained in close communication with Dominick while he was incarcerated. The recordings of their communications, which at times occurred in H.B.'s presence, reflect a domestically violent relationship.

The mother continued to deny that Donovan lived with her, although K.B. stated that he was residing with them. K.B. reported that Donovan was mean to her, including punching her in the head while wearing boxing gloves and striking her with hangers. Donovan was later arrested for operating under the influence while driving the mother's vehicle.

Based largely on the mother's ongoing relationship with Dominick, the court ordered the children be removed from the mother's care and placed in foster care in May 2020.[1] The court noted that the situation was nearly identical to the first removal, except the mother was now engaged in a relationship with Dominick rather than the father. The court made further observations in the modification order:

> [Father] and [Dominick] both had long criminal histories which involved domestic abuse, assaultive behavior, and drug-related charges. Mother had allowed both [father] and [Dominick] to be around the children despite ongoing methamphetamine use. In both circumstances, Mother denied any knowledge of [father] or [Dominick's] drug use and denied that drug use ever occurred around the children. In both circumstances, Mother generally minimized her responsibility for the position that the children were in.

H.B. began displaying behavioral problems including night terrors, intentionally soiling himself, and acting out at daycare. As a result, H.B. began therapy in October 2020. Despite H.B.'s therapist's offer to conduct sessions with the mother, she refused, responding with, "You want me to come to his therapy, I can barely get to my own." During therapy, H.B. was diagnosed with unspecified trauma and stressor-related disorder. He was later diagnosed with dissociation.

---

[1] At the termination hearing, the mother admitted that prior to this second termination hearing, she was using Ecstasy, marijuana, and cocaine. On occasions, her use occurred in the family home while the children were present.

The mother was repeatedly directed at family team meetings, starting at least in January 2021, to alter her work schedule in order to increase her visitation time, but failed to do so. She alleged her job would not allow her to alter her schedule. She now claims that her job gives her more flexibility. The mother remarked to H.B. that his foster parents were not his real parents and he would be coming home soon despite repeated instructions to refrain from making such comments. She also told H.B. that relatives would assault his foster parents.

A contested permanency hearing was held on March 30, 2021. The court ordered the county attorney to file a termination petition, which was done on May 3, 2021. Both parents, DHS, and the county attorney resisted termination. The GAL supported the termination and prosecuted such on behalf of the child. After a five-day hearing, the court terminated both the mother and the father's parental rights to H.B. The mother appeals. The father does not appeal. The State does not appeal and has declined to take a position as to termination on appeal.

## II.    Standard of Review

"We review proceedings terminating parental rights de novo. We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citations and quotations omitted). The petitioner must prove its allegations by clear and convincing evidence. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re M.L.*, No. 21-0511, 2021 WL 2453983, at *2 (Iowa Ct. App. June 16, 2021).

**III.    Discussion**

The mother challenges the termination of her parental rights to H.B.   In particular, she alleges there is insufficient evidence for termination under Iowa Code section 232.116(1)(f) (2021).  She also alleges termination is not in the best interest of the child.

**A.    Sufficiency of Evidence**

The mother alleges there is insufficient evidence to support termination. "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination."  *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015).   "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."  *M.L.*, 2021 WL 2453983, at *2 (quoting *T.S.*, 868 N.W.2d at 435).

Here, the district court terminated the mother's parental rights under section 232.116(1)(f).   Under that section, termination is proper if all the following are found:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home was less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The only contested element is the fourth one—that H.B. cannot be returned to the mother at the present time.

When considering whether the child can be returned to their biological parent, we must determine whether there would be further adjudicatory harm upon return. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication."). Thus, the GAL must prove at least one of the seventeen grounds articulated in section 232.2(6) applies. The district court found that sections 232.2(6)(c)(1), (c)(2), and (f) applied. The mother challenges each finding. For the purpose of this appeal, we focus on section 232.2(6)(c)(2). *See id.* (noting we may affirm if any one of the definitional grounds of a [CINA] are met).

Section 232.2(6)(c)(2) supports a finding of adjudicatory harm when the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . the failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Harmful effects "pertains to the physical, mental or social welfare of the child." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). Further, the section "applies to situations where a child is not provided proper care and treatment while under a parent's oversight." *In re K.S.*, No. 10-0152, 2010 WL 1875729, at *2 (Iowa Ct. App. May 12, 2010).

The record supports the district court's finding under section 232.2(6)(c)(2). First, the mother continues to maintain contact with men who have lengthy criminal histories and drug use—exactly the behavior that triggered the first and second removal. She admitted to maintaining contact with Donovan, believing she is a positive influence on him. She maintains contact with the father, seeing him a couple of times a month, including at her own home up to the time of the

termination hearing, despite his continued use of methamphetamine. Maintenance of contact with both men undercuts the mother's claim that therapy has helped her address the problematic behavior that caused her children's removal. It is concerning that she still struggles, or declines, to identify when someone is under the influence of drugs—the father relapsed in March, yet the mother claims she was unaware of his drug use.[2] While it does appear the mother has made some minimal progress in setting boundaries—she testified to rejecting a friend's attempt to stay at her home due to the friend's drug use—her continued contact with Dominick and the father undercuts her claims that H.B. would be safe in her care.

Furthermore, the mother's past parenting is indicative of future parenting. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). The record shows that the mother consistently failed to properly supervise and care for K.B. in the period between the first and second removals. The mother has failed to grasp how to properly supervise her children. While the mother appears to have made some progress in her own therapy, such appears limited to dealing with her own anxiety and trauma. Although addressing her own mental health may improve her parenting in some respects, the record does not reflect improvement in supervising her children or the ability to deal with

---

[2] The only step the mother takes to inquire into the father's drug use is to ask him about his drug usage. Such also undercuts her claims of progress. The mother's last positive drug screen was roughly three and a half years into the CINA proceeding, with the lab noting that the mother's sample was "inconsistent with human urine."

H.B.'s significant trauma. There is clear and convincing evidence that H.B. will suffer further adjudicatory harm if returned to the mother's custody and termination under section 232.116(1)(f) is supported by this record. The district court's thorough and detailed termination order noted the following regarding mother's claims:

> Child's therapist testified the child has a serious mental illness or disorder as he has been diagnosed with Unspecified Trauma and Stressor-Related Disorder with symptoms including: night terrors, regression, hypervigilance, exaggerated startle response, avoidance, dissociation, and trauma. Testimony clearly established the child is exhibiting "untoward aggressive behavior toward self or others" as described by his therapist, his foster mother, his daycare provider, and even DHS. There is no question he is in need of treatment to alleviate these issues. The question is whether Mother is willing to provide such treatment. Historically, the answer has clearly been "no"—not for this child and not for this child's sibling. Again, this Court considers more than Mother's mere claims the future will be different, and instead, looks at Mother's past behaviors or patterns to assess her future response.
>
> Prior to the Child in Need of Assistance cases being initiated, Mother had failed to engage in K.B.'s mental health services, reporting she was too busy to even get to her own appointments. Throughout the course of the CINA, Mother repeatedly failed to participate in BHIS services, failed to visit K.B. while hospitalized for mental health issues, failed to set up K.B.'s psychological evaluation, and failed to provide K.B.'s prescribed medication.
>
> Regarding this child, Mother was not even able to articulate the child's mental health diagnosis. Rather, she could only describe some of the child's symptoms. Further, when Mother was given the opportunity to have parent-only sessions with the child's therapist in October of 2020, she declined for months. Despite the importance of structure and consistency being explained to Mother repeatedly, she continues to lack any insight as to the real need for this to be modeled in her home. For months, she was unwilling to alter her work schedule to meet this child's emotional and mental needs. Mother lacks any insight into the importance of this child's relationship with his foster parents or how her historic parenting deficiencies continue to impact this child. While Mother may acknowledge the child needs services and agreed to sign releases for his care, this is not the same as being willing to ensure treatment is provided. The child's therapist testified this child's caregiver will need to work closely with his providers and comply with

recommendations to address his mental issues. Mother has not demonstrated she will do so and, given her historic behaviors, her mere assurance does not convince the Court otherwise. Given the evidence, the Court concludes the Petitioner has proven the final element that this child would suffer further adjudicatory harm if returned to the parents' custody at this time.

Lastly, we note that the mother requested a six-month extension at the permanency hearing, suggesting that the progress she has made thus far indicates she could regain custody in the near future. However, at the time of termination, she argued that H.B. could be returned to her custody. The mother did not request a six-month extension at the termination hearing or as part of her appeal, and we do not address such.

## B.     Best Interest of Child

Even when a statutory ground for termination exists, termination must also be in the best interest of the child under the framework set out in section 232.116(2). *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). We give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Further, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The passage of time has taken a devastating toll on H.B. As described by his GAL, the child's mental health is in a "free fall." H.B. has engaged in self-harm, including hitting, biting, and pulling out his hair. He has assaulted other children

and staff at the daycare. His therapist testified that the number one priority for H.B. is immediate permanency, as well as consistent therapy and a loving and nurturing home. The four-year record of the mother establishes she cannot provide for H.B.'s alarming decline in his mental health. As discussed above, the mother continues to have relationships with dangerous men and permits them in her home. She has not made H.B. a priority.

H.B.'s foster parents testified they are willing to adopt H.B. H.B. has told his therapist that he loves his foster family and said that he shares an "invisible string" with his foster parents and foster siblings. He also indicated that he does not share an invisible string with anyone else. His therapist testified H.B. has a high level of trust in his foster mother. H.B. refers to his foster parents as his mom and dad. H.B.'s "integration into [the] foster family" further supports that termination is in his best interest. *See* Iowa Code § 232.116(2). These factors demonstrate that termination is in H.B.'s best interest.

We affirm the termination of the mother's parental rights to H.B.

**AFFIRMED.**